**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **LONZELL JOHNSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:12-CV-4175-BK** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

**<u>MEMORANDUM OPINION</u>**

Pursuant to the parties' consent to proceed before the magistrate judge (Doc. 17), this case has been transferred to the undersigned for a final ruling.  For the reasons that follow, Plaintiff's *Motion for Summary Judgment* (Doc. 16) is **GRANTED**, and Defendant's *Motion for Summary Judgment* (Doc. 21) is **DENIED**.  The Commissioner's decision is **REVERSED** and the case is **REMANDED** for further proceedings.

**I.  BACKGROUND**[1]

**A.    <u>Procedural History</u>**

Lonzell Johnson (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying his claim for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under the Social Security Act.  Plaintiff filed his applications for DIB and SSI in June 2010, and he alleged a disability onset date of December 2008.  (Tr. 24, 39, 138-47).  He was denied benefits at all administrative levels and now appeals

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

to this Court pursuant to 42 U.S.C. § 405(g).  (Tr. 1-7, 21-35, 64-75, 79-87).

B.    **Facts**

Plaintiff was 52 years old at the time of his disability onset date and had a general

equivalency diploma.  (Tr. 138, 168).  He had past relevant work as a car salesman, forklift

operator, packer, vending machine operator, and merchandise deliverer.  (Tr. 30, 59).  In

December 2008, Plaintiff went to Metrocare Services complaining of insomnia, anxiety, panic

attacks, and depression, and he asked for Xanax.[2]  (Tr. 974-75, 999, 1012).  Metrocare mental

health counseling records from that time period through November 2011 document Plaintiff's

continued insomnia, anxiety, and depression.  (Tr. 979-95, 1001, 1012, 1014, 1020, 1024, 1031,

1034-35, 1048, 1060, 1083, 1087, 1115-16, 1123-29, 1133, 1143).  He was consistently noted to

be alert, oriented, and cooperative and to have normal thought processes. (Tr. 986, 990, 999,

1002, 1005, 1012, 1017, 1024, 1043, 1048, 1060, 1068, 1072, 1093-94, 1143).  While Plaintiff

showed signs of improvement occasionally (Tr. 1037, 1042, 1051-52), his symptoms returned,

particularly when he did not take his medication.  (Tr. 1048, 1056, 1093, 1150).

In August 2010, psychiatrist Dr. William G. Yeatts examined Plaintiff.  (Tr. 320).  Dr.

Yeatts noted that Plaintiff reported memory problems as well as trouble completing tasks,

---

[2] While Plaintiff discusses evidence included in medical records dating back to 1986, and those records are before the Court, the undersigned need not consider them because the alleged onset date of disability is December 2008.  *See Burkhart v. Bowen,* 856 F.2d 1335, 1340 n.1 (9th Cir. 1988) (concluding that the ALJ correctly rejected medical evidence that predated the relevant time period); *Slaughter v. Astrue,* 857 F.Supp.2d 631, 643 (S.D. Tex. 2012) (holding that the ALJ properly disregarded evidence that was outside the relevant period of disability); 20 C.F.R. §§ 404.1512(d), 416.912(d) (providing that the Commissioner will generally review medical records covering the 12 months before the claimant filed his application).  Further, while the medical records reveal that Plaintiff suffers from various physical ailments, such as wrist pain, a fractured right ankle, hearing loss, and left shoulder problems, he does not appeal the ALJ's failure to find such impairments severe.

following instructions, focusing, and getting along with others.  (Tr. 320-21, 323).  Plaintiff

stated that his medications kept him calm, but caused him to sleep a lot, and his condition was

worsening over time.  (Tr. 321-22).  He was living in transitional housing with other residents

because he was previously homeless.  (Tr. 322).  Dr. Yeatts observed that Plaintiff's affect was

normal, his thoughts were organized, his insight was fair, and his responses were appropriate.

(Tr. 323-24).  Plaintiff exhibited low average intelligence and reported occasional auditory and

visual hallucinations.  (Tr. 323).  Dr. Yeatts assigned him a GAF score of 50, diagnosed him with

bipolar I disorder, and stated that his prognosis was poor.[3]  (Tr. 324).

     In October 2010, psychiatrist Dr. Rena Popma completed a psychiatric review technique.

(Tr. 325).  Dr. Popma found that Plaintiff was moderately restricted in his activities of daily

living and in his abilities to maintain social functioning, concentration, persistence, and pace.

(Tr. 335).  In completing a mental residual functional capacity (RFC) form, Dr. Popma concluded

that Plaintiff could understand, remember, carry out detailed but not complex instructions, make

basic decisions, attend and concentrate for extended periods, interact with others, accept

instruction, and respond appropriately to changes in a routine work setting.  (Tr. 341).

     At an administrative hearing in June 2011, the ALJ asked the vocational expert (VE)

whether a hypothetical individual with Plaintiff's age, education and work experience, who was

limited to simple work in which interaction with others was only incidental, could do any of

Plaintiff's past work.  (Tr. 60).  The VE responded that such an individual could perform

Plaintiff's past relevant work as a packer and as a vending machine operator.  *Id.*

---

[3] A GAF score of 50 indicates serious symptoms or a serious impairment in social,
occupational, or school functioning.  American Psychiatric Association, *Diagnostic and
Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

C.      **The ALJ's Findings**

In September 2011, the ALJ issued her decision.  (Tr. 21).  At step one of the sequential evaluation process, she found that Plaintiff had not engaged in substantial gainful activity since his disability onset date.  (Tr. 26).  At step two, the ALJ found that Plaintiff had the severe impairments of bipolar disorder and anxiety.  *Id.*  At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled a listed impairment for presumptive disability under the regulations.  (Tr. 27).  Next, the ALJ determined that Plaintiff retained the RFC for a full range of work at all exertional levels, but could only perform work that involved simple instructions and in which interaction with the public and coworkers was incidental.  (Tr. 28).

The ALJ gave little weight to Dr. Yeatts's finding that Plaintiff's GAF score was 50 and that his prognosis was poor because Plaintiff's examination was largely normal.  (Tr. 29).  Additionally, the ALJ noted that Dr. Yeatts did not appear to have access to Plaintiff's treatment records, which reflected that Plaintiff had only moderate mental symptoms which were much better when he took his prescribed medication.  *Id.*  At step four of the sequential analysis, the ALJ found that Plaintiff could perform his past relevant work as a vending machine attendant and packer.  (Tr. 30).  Therefore, the ALJ concluded that Plaintiff was not disabled from December 2008 through the date of the decision.  (Tr. 31).

D.      **Appeals Council Proceedings**

During the appeal proceedings, additional medical records were submitted.  A note from a hospital neurology department from October 2011 stated that Plaintiff had hand tremors and opined that "there is a component of anxiety to the tremors."  (Tr. 1542, 1546).  In November

2011, Plaintiff was admitted to a psychiatric hospital for two days following an altercation with store employees and an episode of auditory hallucinations.  (Tr. 1152, 1377).  That month, he was re-started on anti-psychotic medication.  (Tr. 1391).  Plaintiff also submitted a December 2011 medical assessment by his treating psychiatrist at Metrocare regarding his ability to do work-related activities.  (Tr. 1158-61).  Plaintiff's doctor indicated on the form that Plaintiff had an "extreme loss" in his abilities to, *inter alia*, (1) carry out detailed instructions, (2) maintain regular, timely attendance, (3) concentrate and pay attention for at least two hours, (4) make simple decisions, (5) get along with others, (6) cope with normal stress, and (7) behave in an emotionally stable manner.  (Tr. 1159-60).  Plaintiff's doctor also opined that his impairments would likely cause him to miss work more than four days a month, and that he had been limited to approximately the same extent since he began treatment at Metrocare.  (Tr. 1161).

Plaintiff's January 2012 medical records reflect that while his speech and attention were normal, his insight good, and his judgment fair, he was also psychotic, suffering from paranoid delusions, and his mood was dysthymic.  (Tr. 1393).  In May 2012, Plaintiff was still reporting auditory hallucinations.  (Tr. 1410).  In September 2012, the Appeals Council summarily denied Plaintiff's request for review.  (Tr. 1).

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial

gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not

disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the

regulations will be considered disabled without consideration of vocational factors; (4) if an

individual is capable of performing his past work, a finding of "not disabled" must be made; (5)

if an individual's impairment precludes him from performing his past work, other factors

including age, education, past work experience, and residual functional capacity must be

considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123,

125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).

Under the first four steps of the analysis, the burden of proof lies with the claimant.

*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the

Commissioner determines at any point during the first four steps that the claimant is disabled or

is not disabled.  *Id.*  If the claimant satisfies his burden under the first four steps, the burden shifts

to the Commissioner at step five to show that there is other gainful employment available in the

national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th

Cir. 1994).  This burden may be satisfied either by reference to the Medical-Vocational

Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga*

*v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the

Commissioner's position is supported by substantial evidence and whether the Commissioner

applied proper legal standards in evaluating the evidence.  *Greenspan*, 38 F.3d at 236; 42 U.S.C.

§§ 405(g), 1383(C)(3).  Substantial evidence is more than a scintilla, less than a preponderance,

and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to

support a conclusion.  *Leggett*, 67 F.3d at 564.  Under this standard, the reviewing court does not

reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the

record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

### III.  ARGUMENTS AND ANALYSIS

Plaintiff presents the following five arguments for review, although the Court does not

address them all because reversal is clearly warranted on at least two of the grounds:

1.  Whether the RFC assessment is based on substantial evidence.

2.  Whether the ALJ followed SSR 96-6p in determining that Dr. Yeatts's and the other medical experts' opinions were invalid.

3.  Whether the ALJ's hypothetical question to the VE incorporated all of Plaintiff's disabilities.

4.  Whether the ALJ erred by failing to resolve conflicts between the DOT and the VE's testimony before accepting the testimony.

5.  Whether the Appeals Council erred by failing to reverse the ALJ's decision based on new medical evidence of Plaintiff's disability.

As to Issue 1, Plaintiff argues that the ALJ erred by not making a function-by-function

analysis when determining his mental RFC, and the ALJ's finding that he could do simple work

does not encompass his moderate mental limitations in the areas of concentration, persistence,

pace, and social functioning.  (Doc. 16-1 at 16-18); *see also* Doc. 23 at 3-5 (Plaintiff's response

brief, reiterating arguments).  Defendant asserts that the ALJ's RFC assessment was complete

and supported by substantial medical evidence in the record.  (Doc. 22 at 16-20).

The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to

do work on a sustained basis in an ordinary work setting despite his impairments.  20 C.F.R.

§§ 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  RFC refers to the

most that a claimant is able to do despite his physical and mental limitations.  20 C.F.R.

§§ 404.1545(a), 416.945(a).  The RFC is considered by the ALJ, along with the claimant's age,

education and work experience, in determining whether a claimant can work.  20 C.F.R.

§§ 404.1520(a)(4), 416.920(a)(4).  Generally, an ALJ should request a medical source statement

that describes the types of work a claimant can still perform.  *Ripley v. Chater*, 67 F. 3d 552, 557

(5th Cir. 1995).  However, the absence of such a statement is not reversible error if the ALJ's

decision is nevertheless supported by substantial evidence.  *Id.*  Reversal is warranted only if the

claimant shows that he was prejudiced.  *Id.*

In *Ripley*, the ALJ ruled that the claimant could perform sedentary work even though

there was no medical evidence or testimony supporting that conclusion.  *Id.*  The appellate court

noted that the claimant's record contained a vast amount of evidence establishing that he had a

back problem, but did not clearly establish the effect that condition had on his ability to work.

*Id.*  The court thus remanded with instructions for the ALJ to obtain a report from a treating

physician regarding the effects of the claimant's back condition on his ability to work.  *Id.* at 557-

58.  The court rejected the Commissioner's attempt to argue that the medical evidence

substantially supported the ALJ's conclusion because the court was unable to determine the

effects of the claimant's conditions, "no matter how 'small'" on his ability to work, absent a

report from a qualified medical expert.  *Id.* at 558 n.27.

In this case, the ALJ apparently attempted to compensate for Plaintiff's depression and

anxiety when he limited Plaintiff to simple, unskilled work that involved minimal contact with

others.  *See* Tr. 28 (determining that Plaintiff retained the RFC for a full range of jobs at all

exertional levels, but could only do work that involved simple instructions and in which

8

interaction with the public and coworkers was incidental).  Nevertheless, there is a dearth of medical evidence in the record to support a determination that Plaintiff can perform such work despite his mental impairments.  *Ripley*, 67 F.3d at 557-58.  Indeed, Plaintiff presented evidence to the Appeals Council from his treating doctor that he had an "extreme loss" in his abilities to perform almost all work-related activities inquired about.  (Tr. 1159-60); *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding that evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's final decision is based).  Further, while Dr. Popma concluded that Plaintiff could perform several work-related tasks, (Tr. 341), the ALJ rejected that conclusion, finding that Plaintiff's impairments were "more severe than was concluded by the state examining and non-examining doctors."  (Tr. 30); *see Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (holding that conflicts in the evidence are for the Commissioner to resolve, not the district court).  Similarly, the ALJ did not accept Dr. Yeatts's opinion that Plaintiff's GAF was 50, indicating severe problems with functioning, and that his prognosis was poor.  (Tr. 28).  While the ALJ may choose to reject Dr. Yeatts's and Dr. Popma's opinions, she cannot then independently decide the effects of Plaintiff's mental impairments on his ability to perform work-related activities, as that is expressly prohibited by *Ripley*.  67 F.3d at 557-58.  Instead, at that point, it became incumbent upon the ALJ to obtain an expert medical opinion about the types of work tasks that Plaintiff could still perform given his impairments.  *Id.* at 557.

In short, there is no evidence of record supporting the ALJ's RFC finding that Plaintiff can perform simple, unskilled work.  *See, e.g.*, *Williams v. Astrue*, 355 Fed. App'x 828, 831-32 (5th Cir. 2009) (reversing and remanding where the ALJ rejected the opinions of the claimant's

treating physicians and relied on his own medical opinions as to the limitations presented by the claimant's back problems in determining RFC).  Accordingly, reversal and remand for further proceedings is required.  Because the Court is remanding based on the ALJ's error in determining Plaintiff's RFC, there is no need for the Court to address Issues 3 through 5, which are moot in light of the Court's ruling.  Further, if the need should arise, Plaintiff can address on remand the concerns he raises in Issue 2.  20 C.F.R. § 404.983 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment* (Doc. 16) is **GRANTED**, and Defendant's *Motion for Summary Judgment* (Doc. 21) is **DENIED**.

**SO ORDERED** on July 1, 2013.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE